# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CA-01555-SCT

*TOMMY L. EWING, JR.*

*v.*

*LISA YOUNGER NEESE, LOWNDES COUNTY*
*CHANCERY CLERK*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/29/2014 |
| TRIAL JUDGE: | HON. DOROTHY WINSTON COLOM |
| TRIAL COURT ATTORNEY: | ROY ANDRE' PERKINS |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | ROBERTA LYNN HAUGHTON |
| ATTORNEY FOR APPELLEE: | COURTNEY BRADFORD SMITH |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 08/18/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     A father who had served as guardian for his minor child when the chancery court approved a settlement agreement for that minor child sought a copy of the sealed settlement documents after he had been removed as guardian.  The chancellor denied his request.  But because he had access to those documents as guardian and participated in the settlement process, no purpose was served by keeping the sealed documents from him.  So, we reverse and remand with instructions for the chancellor to grant him access to the documents.

## FACTS AND PROCEDURAL HISTORY

¶2. Tamarcus Ewing—a minor—and his mother were involved in a motor-vehicle accident. Tamarcus sustained severe injuries and his mother died. On March 5, 2002, the Chancery Court of Noxubee County appointed Tommy Lee Ewing—Tamarcus's father—guardian of Tamarcus's person and estate. Tommy filed a complaint on behalf of Tamarcus in the Circuit Court of Noxubee County, alleging negligence by multiple defendants. The complaint sought damages for both the injuries Tamarcus sustained and the wrongful death of his mother.

¶3. At some point, the parties settled the circuit-court case. On September 29, 2003, the Noxubee County Chancery Court sealed the guardianship case file on stipulation and agreement of the parties and attorneys of record in the circuit-court action. The Noxubee County Chancery Court then authorized the acceptance of the settlement on November 17, 2003.

¶4. On April 14, 2006, the Noxubee County Chancery Court transferred Tamarcus's guardianship proceeding to the Lowndes County Chancery Court. The transfer order states that the case was to "remain sealed," but the guardian could view the file once filed and docketed with the clerk's office in Lowndes County. An identical transfer order was entered by the Lowndes County Chancery Court.

¶5. On October 30, 2009, James C. Patton—the attorney for the guardianship—petitioned the Chancery Court of Lowndes County to appoint a guardian ad litem for Tamarcus. He alleged that Tommy had mismanaged Tamarcus's funds. A guardian ad litem was appointed

2

and ordered to investigate Tamarcus's "situation in all respects, including, but not limited to . . . the financial aspects of his guardianship."

¶6.     On July 21, 2010, the chancellor removed Tommy as guardian of Tamarcus's estate after finding that seventy-five thousand dollars in annuity payments had been redirected from a frozen guardianship account into an unfrozen account jointly owned by Tommy and Tamarcus. The court also found that Tommy had spent those funds without court approval. Chokwe Lumumba and Roy A. Perkins were appointed as coguardians of the estate. Tommy was not removed as the guardian of Tamarcus's person.

¶7.     On July 26, 2013, Tommy petitioned the court for an order requiring Perkins to render an accounting of Tamarcus's estate. In his petition, Tommy alleged that Perkins had refused his requests for an accounting, and because of this, Tommy did not know the location or amount of estate assets. Nothing in the record indicates whether an accounting was ordered or whether the court held a hearing regarding Tommy's petition. On September 13, 2013, Tommy filed a motion asking the court to enter an order substituting Roberta L. Haughton for Perkins as guardian of Tamarcus's estate. This motion was set to be heard on November 19, 2013, but nothing in the record indicates whether the hearing took place.

¶8.     On May 26, 2014, Tommy sent a letter to Lisa Younger Neese—the Lowndes County Chancery Court Clerk—requesting a copy of the settlement documents relating to the Noxubee County personal-injury and wrongful-death case. Nothing in the record indicates whether Neese responded to Tommy's letter.

3

¶9. On July 14, 2014, Tommy filed his "Petition for Unredacted Copies of any and all Settlement Documents Contained in the Estate of Tamarcus Ewing, a Minor from the Underlying Personal Injury Wrongful Death Case Filed in Noxubee County Circuit Court." He named Neese and Perkins as respondents. In his petition, Tommy alleged that he had never received a copy of the settlement documents and did not know the terms of the settlement despite signing the settlement papers. Tommy claimed that, without the settlement documents, he was unable to defend himself against the accusations made by Patton. He further alleged that the Chancery Court Clerk's office refused to give him copies of the settlement documents. Tommy argued that, because he was a party to the underlying personal-injury and wrongful-death action, the order sealing the case file did not apply to him and that he was entitled to copies of the settlement documents. Tommy asked the court to enter an order requiring the clerk's office to give him an unredacted copy of all settlement documents.

¶10. The chancellor held a hearing on Tommy's petition. At the hearing, Tommy's attorney stated that Perkins was not a proper party to the action. The chancellor dismissed Neese from the proceeding and ruled that she was not a proper party because she was simply following the court's order sealing the file. After dismissing Neese, the judge treated Tommy's petition as a motion. Tommy argued that not having the documents had "caused him a lot [of] problems" and he needed a copy for his records. The chancellor ruled that Tommy was not entitled to copies of the settlement documents because he was not a party to the action and therefore lacked standing to make the request.

¶11. The court entered an Order of Dismissal of Tommy's petition on September 29, 2014. The order provides that Neese was not a proper party; Tommy was not, nor ever had been, a party to the lawsuit, and he therefore had no standing to bring the petition; the terms of the settlement were sealed at the request of the parties with their full knowledge and disclosure; and Tommy's stated reasons for unsealing had no basis in law. Tommy appealed.

**ANALYSIS**

¶12. Tommy raises three issues. He first argues that the chancery court file never was sealed to begin with. Next, he contends that he is entitled to a copy of the settlement documents because he was a party to the underlying personal-injury and wrongful-death action that resulted in the settlement. Finally, he argues that Neese had failed to respond to his petition, had presented no defense at the hearing, and therefore is procedurally barred from raising any defenses on appeal.

**I.     The case file was sealed.**

¶13. Tommy contends that the chancellor relied on an order that sealed the Noxubee County Circuit Court action, but not the Lowndes County Chancery Court file. This, however, is incorrect. The order in question was entered on September 29, 2003, by the Noxubee County Chancery Court for Cause Number 2002-21.[1] It provides that the subject file shall be sealed "as per stipulation and agreement of all the parties and counsel of record in Civil Action Number 2002-095 in the Circuit Court of Noxubee County, Mississippi."

---

[1] This is the estate case's cause number before it was transferred to the Lowndes County Chancery Court.

5

¶14.    Tommy mistakenly believes that this order sealed the Noxubee County Circuit Court action apparently because that case's cause number is mentioned in the order. But the above-quoted text simply means that all of the parties and counsel of record in the circuit-court action stipulated to and agreed to seal the estate case's file. Furthermore, when the estate case was transferred from Noxubee to Lowndes County, the transfer orders stated that the case was to remain sealed as previously ordered by the court.

## II.    Tommy was entitled to the settlement documents.

¶15.    The chancellor held that Tommy did not have standing to bring his petition because he was not a party to the estate case. However, this case is not about standing, nor is it—as the dissent incorrectly suggests—whether the documents at issue should be un-sealed. Tommy does not seek to intervene in any case or litigation, and he has not requested the documents be unsealed. He seeks no more than access to the sealed documents, and the question before us is whether he should be granted access.

¶16.    The chancellor held that Tommy's stated reasons for unsealing the documents had no legal basis. On appeal, Tommy argues that the sealing order does not apply to him because he was a party to the underlying personal-injury and wrongful-death action that resulted in the settlement agreement.

¶17.    In *Estate of Cole,* this Court recognized that Mississippi "favors access to public records," while public policy favors out-of-court settlements.[2] As a result, courts must

---

[2] *Estate of Cole v. Ferrell*, 163 So. 3d 921, 926 (Miss. 2012).

balance[3] the public's right to access with private interests favoring confidentiality when deciding whether or not to seal a case.[4] Public interests favoring access include cases with at least one party that is a public entity or public official, or cases involving matters of public concern.[5] On the other hand, private interests favoring the granting of confidentiality include cases with private litigants concerning matters that are not of public concern,[6] agreements that would protect the identity of victims,[7] and "shielding confidential settlement agreements from public scrutiny."[8]

¶18. The dissent's reliance on the *Estate of Cole* test—which addressed whether a settlement agreement should remain sealed from the general public—is misplaced. That test is not relevant here, as no party has challenged the chancellor's decision to seal the documents. Ewing merely seeks access to the documents—which he concedes will remain

---

[3] The record before us does not reflect that the chancellor conducted any such balancing. But Tommy has not argued that the case should not have been sealed. Rather, he only has contended that the chancellor should have given him access to the sealed documents.

[4] *Estate of Cole*, 163 So. 3d at 926 (citing *State Farm Fire and Cas. Co. v. Hood*, 2010 WL 3522445, *2 (S.D. Miss. Sept. 2, 2010)).

[5] *Estate of Cole*, 163 So. 3d at 926 (citing *State Farm Fire and Cas. Co.*, 2010 WL 3522445 at *2).

[6] *Estate of Cole*, 163 So. 3d 921, 927 (Miss. 2012) (citing *State Farm Fire and Cas. Co.*, 2010 WL 3522445, at *2).

[7] *Estate of Cole*, 163 So. 3d 921, 926 (Miss. 2012) (citing *Marcus v. St. Tammany School Board*, 1997 WL 313418, **6–7 (E.D. La. June 9, 1997)).

[8] *Estate of Cole*, 163 So. 3d at 928.

sealed as to the general public—for his personal use. The dissent cites no authority that would support denying Ewing access.

¶19. In *Williamson v. Edmonds*, this Court found that confidentiality agreements and sealing orders are not intended to prevent individuals from obtaining information about cases in which they participated.[9] Former clients brought a claim against an attorney who previously had negotiated a settlement for them.[10] The terms of that settlement agreement were sealed by the trial court, and the clients executed a confidentiality agreement in exchange for the settlement funds.[11] In the subsequent litigation, the attorney refused to answer the client's discovery requests, alleging they violated attorney-client privilege and the confidentiality agreement signed by the clients in the settlement case.[12]

¶20. On interlocutory appeal, this Court held that the confidentiality agreement and sealing order were in place "to prevent public dissemination" of the litigation and settlement, "not to prevent the [clients] from obtaining information relating to the case they participated in as plaintiffs."[13] And contrary to the dissent's contention, *Williamson*'s relevant holding did not in any respect turn on the existence of the attorney-client privilege, but rather, on the purpose for orders sealing documents: to prevent public dissemination.

---

[9] *Williamson v. Edmonds*, 880 So. 2d 310, 321 (Miss. 2004).

[10] *Id.* at 312, 314.

[11] *Id.* at 314.

[12] *Id.* at 313.

[13] *Id.* at 321.

¶21.	Like the clients in *Williamson*, Tommy is seeking information relating to a case in which he participated. While he was not a plaintiff in the personal-injury and wrongful-death case , Tommy participated as Tamarcus's Next Friend and general guardian. As Tamarcus's Next Friend and guardian, Tommy was privy to all aspects of the circuit-court case and—more importantly—the settlement agreement. In fact, Tommy signed the settlement agreement and other documents relating to the settlement. Furthermore, as the guardian of Tamarcus's estate from 2002 until his removal in 2009, Tommy had access to all of the financial information relating to the estate, including the settlement agreement.

¶22.	While it is true that courts have discretion to seal, and refuse access to, documents, that discretion may be exercised only where a legal basis to do so exists. Here, the legal basis for sealing the settlement documents was privacy. Because Tommy was privy to all the details of the sealed settlement agreement, no interest in privacy is advanced by keeping the documents from him.

¶23.	The dissent flips this analysis on its head, focusing only on Ewing's perceived lack of need for the information, with no attention to the true issue of a need for privacy. Our law clearly predicates denial of access to sealed documents on an interest in privacy and here, the person requesting access actually participated in the settlement and has had access to the documents, so no interest in privacy can be served by keeping the documents from him. The dissent's extensive and tortured recitation and characterization of Tommy's title and conduct has no bearing on the issue before us for decision.[14]

---

[14] The dissent incorrectly concludes that we have not examined the facts in the record it uses to attack Ewing's character and conduct. We indeed have examined them, but find

¶24.    Therefore, we hold that the chancellor erred by denying Tommy's request for a copy of the settlement documents.

### III.    Neese's Failure to Respond

¶25.    Tommy also argues that Neese is barred from presenting a defense on appeal because she failed to put on a defense at trial.  In any event, Neese's arguments on appeal are unavailing.  As appellee, Neese argues that Tommy failed to serve her in a manner consistent with the Mississippi Tort Claims Act.  She also argues that Tommy has filed a frivolous appeal in violation of the Mississippi Litigation Accountability Act and asks the Court to award her attorney's fees and other costs of defending the appeal.

¶26.    Because we rule in Tommy's favor, his appeal was not frivolous.  As for his failure to serve notice on Neese in a manner consistent with the Tort Claims Act, the chancellor dismissed Neese as an improper party and treated the petition as a motion without a respondent, rendering notice irrelevant.  Further, the Tort Claims Act applies to a "claim," and Tommy's request for documents does not fit the statutory definition of a claim. Mississippi Code Section 11-46-1 defines a claim as "any demand to recover damages from a governmental entity as compensation for injuries."[15]   Tommy seeks documents, not damages.

### CONCLUSION

them irrelevant to the question before us.  To be clear, the issue is not whether Ewing properly was removed as guardian, nor is it whether he has a colorable interest in any pending litigation, rather, the issue is whether Ewing is entitled to view the records.

[15] Miss. Code Ann. § 11-46-1(a) (Rev. 2012).

¶27. Because Tommy was a participant in the personal-injury case and was privy to the terms of the settlement agreement, we reverse the chancellor's ruling denying Tommy an unredacted copy of the settlement documents and remand the case to the Lowndes County Chancery Court for proceedings consistent with this opinion.

¶28. **REVERSED AND REMANDED.**

**LAMAR, KITCHENS, KING AND COLEMAN, JJ., CONCUR. RANDOLPH, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., MAXWELL AND BEAM, JJ.**

**RANDOLPH, PRESIDING JUSTICE, DISSENTING:**

¶29. With all due respect, I am constrained to dissent to my distinguished colleague's opinion. My reasons are legal and factual. I agree with the majority that the standard of review is *de novo* for questions of law, such as the issue of standing. *See **Vaughn v. Vaughn***, 798 So. 2d 431, 434 (Miss. 2001). However, the issue of standing can be dispensed readily, as is discussed more fully below. There is no legal principle or caselaw to support Ewing's argument that he has standing in a non-existent civil action or in a guardianship in which he was disqualified as guardian for the estate of the ward. This leaves this Court to review the chancellor's ruling to deny a nonparty's motion to access sealed records under an abuse-of-discretion standard.

¶30. "This Court has a limited standard of review in examining and considering the decisions of a chancellor." ***Ballard v. Commercial Bank of DeKalb***, 991 So. 2d 1201, 1204-05 (Miss. 2008). This Court will not disturb the findings of the chancellor unless the chancellor was "manifestly wrong, clearly erroneous, or applied an erroneous legal standard."

11

*Tinnin v. First United Bank of Miss.*, 570 So. 2d 1193, 1194 (Miss. 1990). "Where the chancellor's findings are supported by substantial evidence, this Court is without authority to disturb his or her conclusions, although this Court might have found otherwise as an original matter." *Dew v. Langford*, 666 So. 2d 739, 742 (Miss. 1995). "Abuse of discretion is the most deferential standard of review appellate courts employ." *Ashmore v. Miss. Auth. on Educ. Television*, 148 So. 3d 977, 982 (Miss. 2014). When we abide by this standard, we "must affirm the decision, regardless of what any of us individually might have ruled had we been the judge, unless there is a definite and firm conviction that the court below committed clear error." *Ferguson v. Univ. of Miss. Med. Ctr.*, 179 So. 3d 1060, 1064 (Miss. 2015) (internal citations omitted). I think we all can agree (although the majority's position is unstated) that no judge in his or her right mind would entertain a suit such as this one, against his or her own clerk, praying for the clerk to disobey an order issued by the court it serves. Thus, Ewing cannot verily argue that Chancellor Colom's decision was clearly erroneous, grossly unsound, or unreasonably illegal. *See Abuse of Discretion*, Black's Law Dictionary (10th ed. 2014) ("An appellate court's standard for reviewing a decision that is asserted to be grossly unsound, unreasonable, illegal, or unsupported by the evidence.").

¶31.     The majority posits my review of the record is extensive[16] and tortured.[17] However, not one fact mentioned in this dissent is claimed by the majority to be misstated or

---

[16] The review is extensive due to the paucity of facts reported in the majority leading to the chancellor's ruling.

[17] Webster's Dictionary defines "torture" as distort and "tortuous" as twisting and/or devious. *Torture*, *Tortuous*, Webster's II New College Dictionary (1st ed. 1995).

12

misrepresented. I agree with the former and reject the later. As today's majority author, Presiding Justice Dickinson, previously has written, "our duty [] requires us carefully to scrutinize every case." *Bluewater Logistics, LLC v. Williford*, 55 So. 3d 148, 156 (Miss. 2011). "Yet our duty requires us in every case to be as careful and as sensitive to error as we can be, and we cannot condone a standard that allows us to be less sensitive to error in one case than in another." *Id.* A disinterested review of the trial court record fails to identify any facts or legal arguments which support reversal. The trial record reveals innumerable egregious acts by Ewing which led to his removal as guardian, years before this frivolous proceeding was filed against the chancery clerk of Lowndes County, followed by this frivolous appeal, naming the chancery clerk of Lowndes County as appellee.

*Chancery Court Proceedings*

¶32.    On March 5, 2002, Tommy Ewing Jr. ("Ewing") was appointed upon his application to be guardian of his son ("Tamarcus") and his son's estate in the Chancery Court of Noxubee County, after Tamarcus's mother was killed in a car accident, in which Tamarcus was injured.[18] Ewing was required to file annual accountings. Pursuant to statute, Ewing, upon separate application to the chancery court, sought and obtained permission to file a wrongful- death and personal-injury lawsuit in his representative capacity "for the use and benefit of [the] ward," Tamarcus.[19]  His name, although included in the style of the civil action, was solely in a titular capacity. Thus, Ewing as a party existed in name only, for he

---

[18] The duties of a guardian are well described in Sections 93-13-1 to 93-13-281 of the Mississippi Code. Loyalty and fidelity to the ward are paramount.

[19] *See* Miss. Code Ann. § 93-13-27 (Rev. 2013); Miss. R. Civ. P. 17(c).

13

had no claim. He was neither a real nor actual plaintiff. In September 2003, Ewing, in his role as guardian, moved the court to seal the file of the civil suit. A settlement of Tamarcus's personal injury and sole wrongful-death beneficiary claims was approved by the chancellor in November 2003.[20] The civil case was dismissed in December 2003.

¶33.   As early as August 2004, Ewing was requesting per diem and mileage expense payments for the time spent with his son after the accident.[21] During the pendency of this present action, Ewing informed the chancellor that he was disabled. The record before us reveals no independent source of income or benefits for Ewing.

¶34.   In March 2005, Ewing filed a Petition for Review, requesting that he be allowed to review the sealed file to determine:

> the total amount of settlement proceeds tendered by each and every defendant in the instant case;
>
> the total amount of attorneys fees [sic] tendered to each and every attorney participating in the instant case;
>
> the total amount of proceeds tendered on behalf of the minor child Tamarcus Ewing and the mechanism for disbursing those funds;
>
> that the Court issued [sic] an order determining whether a full and final dispersal of all funds has been accomplished in accordance with the settlement, and a full payment of expenses.

---

[20] Ewing, as an individual, neither had nor made a claim as a real party in interest based on the accident.

[21] Ewing requested and received $7,725.00 in per diem, $2,455.20 in mileage, and a $20,000 fee "which represents the balance of attorneys' fee [sic]. . . for all of the travel and expense Tommy Ewing had to incur in the prosecution of the civil litigation. . . ."

14

The petition was set for hearing and provided notice to counsel for the defendants in the original civil suit. (Today's petition provided notice to neither the attorneys for Tamarcus and/or the guardianship, nor counsel for the defendants.). Nothing in the record indicates Ewing sought or obtained a ruling on that petition.

¶35.    A year later, the guardianship was transferred upon Ewing's request from Noxubee County to Lowndes County, where Ewing and Tamarcus lived in a house paid for out of funds from the guardianship.[22] In the 2006 order transferring the guardianship, the chancellor specifically provided permission for the guardian, then Ewing, to view the entire file upon filing and docketing in Lowndes County. No record evidence reveals that Ewing afforded himself that opportunity in his role as guardian. After a subsequent pleading was filed improperly in Noxubee County, the chancellor again stated that the guardianship had been transferred to Lowndes County, and the record would remain sealed; yet, once again, Ewing, in his role as guardian, was permitted to view the record.

¶36.    Through the five years-plus Ewing acted as guardian, he was no stranger to the court. Ewing filed countless petitions seeking approval to expend guardianship funds. Court orders provided for the payment of home insurance premiums, ad valorem taxes, maintenance and repairs, landscaping services, a security system, a storage building, blinds, hardwood floors, carpet, appliances, and numerous sets of furniture for the home owned by the Estate and occupied by Guardian Ewing and ward Tamarcus.

---

[22] Total house purchase disbursement equaled $144,284.

¶37. In 2009, James Patton, the attorney who filed these requests for Ewing, filed a Motion to Appoint Guardian Ad Litem, alleging, *inter alia*, that Ewing was in possession of a significant amount of money belonging to the estate of the ward which needed to be deposited in an interest-bearing account. He prayed that Ewing be ordered to produce all bank records and account information. Patton averred that a conflict had arisen, as he was counsel for both Ewing and the guardianship. He prayed that attorney Lee Ann Turner be appointed guardian ad litem (GAL). In a November 2009, order appointing Turner as GAL, the chancellor noted that an accounting had never been filed by Ewing as guardian. Turner was ordered to investigate the ward's situation, including all finances, and Ewing was required to fully cooperate.

¶38. After Ewing denied access to the ward, the ward's home, and all records, and after Ewing refused to turn over checks exceeding $82,000 belonging to the guardianship, the GAL filed a Notice to the Court Regarding Guardian Ad Litem's Investigation and Motion for Order to Show Cause. Chancellor Colom ordered Ewing to appear and show cause for his failure to comply with court orders. The chancellor further ordered that all accounts holding guardianship funds be retitled "Guardianship of Tamarcus Ewing." The chancellor found that Ewing had redirected guardianship funds into accounts with Ewing as a co-owner. The chancellor further ordered that all annuity payments be redirected and immediately frozen in the account in which they were deposited. The chancellor found that Ewing's "redirection of the annuity payments to a non-guardianship, non-frozen account was not authorized by Order of this court and was a misappropriation of funds belonging to the

16

child's guardianship." Ewing moved to continue the hearing scheduled on the show-cause hearing. Subsequently, Chokwe Lumumba and Roy Perkins entered appearances on his behalf.

¶39.    On March 12, 2010, the GAL filed a report with the court. Her attached certificate of service reveals that the report, accompanying exhibits, and copies of bank records, which included an August 31, 2004, Deposits and Disbursements and a November 3, 2003, Proposed Periodic Payment Spreadsheet representing all settlement monies, was provided to counsel for Ewing (Perkins and Lumumba) and counsel for the guardianship (Patton).[23] The report informed the court that Ewing had refused to cooperate, had failed to file an accounting since he had been appointed guardian of the estate, had failed to reinvest $82,000 of guardianship funds, had improperly directed at least $79,000 of guardianship funds into a jointly named co-account controlled by him individually, had incurred numerous overdraft charges, and had used guardianship funds without court authorization for items unrelated to Tamarcus's needs. The bank records reveal Ewing had made more than $50,000 in unauthorized cash withdrawals and paid more than $29,000 by checks and/or debit card to numerous merchants, including BQuick, Sprintmart, and other convenience-type stores, also unauthorized by the court. The report also read that "the bank records of Tamarcus's social security funds do not appear to show a need for additional funds from the guardianship to meet the child's individual needs that were not being met by court-authorized expenditures

---

[23] Nothing in the record evidences that Ewing requested these documents from either of these new attorneys who represented Ewing individually, except for the claim made against Perkins in this proceeding, which then was waived during the proceeding and dismissed. *See* ¶ 42, *infra*.

17

of guardianship funds."[24] The report recommended that Ewing be removed as guardian of the estate.

¶40.    In July 2010, the show-cause hearing was held. Understandably, Ewing was stripped of his powers and access when he was removed as guardian of the estate of Tamarcus.[25] No appeal was taken of that order. Turner was relieved as GAL, and Patton was relieved as attorney for the guardianship. Lumumba and Perkins were appointed coguardians.

¶41.    On February 7, 2013, the coguardians moved the court for permission to withdraw as guardians of the estate. Lumumba subsequently was discharged, but Perkins was ordered to remain as guardian. On July 26, 2013, Ewing individually filed a petition for an accounting of the estate. Ewing alleged that he "has not been given any information as to the deposits into or disbursements from the estate of Tamarcus Ewing, a minor, despite having made several requests to the legal guardian of the estate of Tamarcus Ewing, a minor." On September 13, 2013, Ewing moved to substitute Roberta L. Haughton, his present attorney, as "administrator" [sic][26] of the estate of Tamarcus.

¶42.    Then, nearly a year later, on July 14, 2014, four years after Ewing was disqualified as guardian and more than ten years after the civil case was dismissed, Ewing individually filed another petition, this time seeking unredacted copies of all settlement documents related to Tamarcus's estate. Ewing named the Lowndes County Chancery Clerk and Roy Perkins,

---

[24] Tamarcus's social security payments were approximately $790 per month.

[25] *See* Miss. Code Ann. § 93-13-23 (Rev. 2013).

[26] Throughout the proceedings below and on appeal, Ewing consistently refers to the guardian of the estate as the "administrator of the estate."

improperly identified as the administrator of the estate, as respondents. Ewing claimed that, because he had been at one time a party to his son's civil action, he was forever entitled to ignore the court's orders sealing the records and to receive unredacted copies of all settlement documents.

¶43.    During the hearing on that petition, Ewing's counsel advised the chancellor that the guardian of Tamarcus's estate (Perkins) was not a proper party – "Mr. Perkins, Your Honor, after reflection, I determined that he is really not a proper party at this stage because all we're seeking is a copy of the records." It was revealed that Perkins had not even been served. When Perkins was dismissed, only the chancery clerk remained as a party. Following Perkins's dismissal, the chancellor questioned Ewing's counsel as to why the clerk was made a party:

> Why is the clerk a party, ma'am? The clerk did not seal, redact, do anything, in this case. She is not a party and she is dismissed. . . . She is not a party to this. This is an action that was sealed by Order of the Court, but if I unseal it, she will do whatever I order her to do. She's not a party. . . . She has no interest in this case. . . . So she may be excused.

The chancellor informed Ewing that the motion should have been directed to the court. Respondents, such as the clerk, were neither necessary nor proper. With both respondents dismissed, the chancellor treated Ewing's petition as if it were a motion.[27]

¶44.    The chancellor advised that "the only person who is a party now in the Chancery Court . . . is Tamarcus Ewing's legal guardian, . . . Mr. Roy Perkins." The chancellor noted

---

[27] Even if we had decided a right to appeal was warranted on a denial of a petition to unseal the documents, would not such a petition require notice to the guardian of the estate and to all parties and their counsel from the settled, civil suit? No such notice appears.

that Tamarcus's case settled in 2002[28] and that there was no ongoing, legal dispute with the settling defendants.

> Your client has been in front of me do you know how many times asking for money. He sat on this stand and testified he approved the settlement in 2002 [sic]. He signed documents in Circuit Court releasing everybody, agreeing to it to be sealed. Now, if he didn't get copies, that's between him and his lawyers then. This Court sealed them at their request. I can't release them because he's not a party.

Before the chancellor made her final ruling, Ewing cited no applicable caselaw in support of his being allowed access to the sealed documents. The chancellor denied Ewing's petition/motion. The chancellor found that (1) the clerk was not a proper party, (2) Ewing was not a party and had no standing, (3) Ewing's reasons for unsealing the documents lacked legal basis, and (4) the guardian of the estate was not a party to the petition.

¶45.    The majority suggests that the "extensive and tortured recitation" of these facts considered by the chancellor has "no bearing on the issue before us for decision." (Maj. Op. ¶ 23). I am not sure how an appellate court can determine if a trial judge was "manifestly wrong, clearly erroneous, or applied an erroneous legal standard" without meticulously examining the record to determine if the findings of fact and conclusions of law contained in her decree find support in the record. This journey was necessary to appreciate the facts and law presented to the chancellor and the basis (or lack thereof) of the petition and, finally, Ewing's involvement. The chancellor recounted the decade-long history of Ewing taking advantage of the ward, which this Court should consider in determining whether the chancellor abused her discretion in denying Ewing access to the sealed documents. Without

---

[28] The case settled in 2003.

reporting the facts and history of this case, the majority opines that Ewing should prevail, even without notice to the guardian or the settling defendants. It is crystal clear that Ewing failed to satisfy the chancellor that he had a colorable interest in pending litigation, for there is no pending litigation, other than this frivolous appeal. I find no error in the chancellor's dismissal of Ewing's petition.

*Analysis*

¶46.   Tommy Ewing has never been a real party in interest in any of these proceedings, as contemplated by Rule 17 of the Mississippi Rules of Civil Procedure and our guardianship laws. He was a titular plaintiff, one in name only, in the original, now dismissed civil action. He *was* guardian of Tamarcus's estate before he was disqualified for blatant misappropriation of funds. Initially, Ewing's authority was limited to filing suit on behalf of Tamarcus in his representative capacity, i.e., guardian. As a guardian, Ewing possessed no privileges or powers outside that granted by statute, caselaw, and the chancery court. The rights, privileges, and prerogatives attached to the title of guardian existed only during the time Ewing held such title. Once disqualified, any semblance of authority or power to delve into Tamarcus's financial affairs vanished. Ewing was more than a stranger to these proceedings, for his less-than-altruistic behavior transformed him into an interloper. Those versed in the maxims of chancery practice would muse that Ewing came to court with worse than unclean hands; his hands were downright dirty. Ewing lacked a cognizable, legal interest in the civil suit, which was settled long ago. That power rests in the bosom of the court, to be carried out

21

by the guardian (Perkins), or a GAL, if needed, should the court deem it appropriate or necessary.

¶47.    The majority sets forth the test for standing – a party has standing "'when they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise provided by law.'" *Burgess v. City of Gulfport*, 814 So. 2d 149, 152-53 (Miss. 2002) (quoting *State v. Quitman County*, 807 So. 2d 401, 405 (Miss. 2001)).  Ewing can assert no colorable interest in the subject matter of the litigation, for there is no ongoing litigation. Likewise, he can experience no adverse effect from the conduct of the defendant, for there is no defendant. "[T]he issue adjudicated in a standing case is whether the particular plaintiff had a right to judicial enforcement of a legal duty of the defendant or . . . whether a party plaintiff in an action for legal relief can show in himself a present, existent actionable title or interest, and demonstrate that this right was complete at the time of the institution of the action." *City of Picayune v. S. Reg'l Corp.*, 916 So. 2d 510, 526 (Miss. 2005) (citing *American Book Co. v. Vandiver*, 181 Miss. 518, 178 So. 598, 599 (1938)). He is not and never has been a party plaintiff in any of these proceedings. He has not shown or presented an existent title or interest in this proceeding. There is no legal duty imposed on a nonexistent defendant. Ewing lacks standing to bring an action to invalidate, modify, or seek enforcement of the settlement agreement.

¶48.    There is no record evidence as to why Ewing has need of the settlement documents, or why Ewing named the chancery clerk as a party, or why Ewing dismissed the guardian of Tamarcus's estate. Furthermore, this information was provided to all attorneys who either

22

represented Ewing, Tamarcus, Tamarcus's guardianship, or Debra's estate during the civil suit and settlement negotiations. Those attorneys include The Crawley Law Office, James C. Patton, Caroline C. Moore, Edward Sanders, Bennie L. Turner, Armstrong Walters, Michael C. Steele, David Lambert, David Owen, and Brian H. Neely. Aside from a letter sent to Sanders, there is no record evidence that Ewing attempted to obtain and was refused the documents he signed from any of these attorneys.

¶49.    Ewing forfeited any rights in futuro to participate in financial affairs of the ward, having disqualified himself and been removed from his position of trust. Ewing never has provided any court, much less the trial court, a clear, concise reason to unseal the records. Ewing simply argues that "not having the documents had 'caused him a lot [of] problems' and he needed a copy of his records."[29]

¶50.    From the record presented, including assertions by Ewing in his brief (but not in the record), it is crystal clear that he knew (1) the identity of the defendants from his son's civil suit, (2) the amount of the monthly annuity payments, (3) the amount of Tamarcus's monthly social security payments, and (4) the amount of the full settlement. He has offered no testimony that the sealed documents were necessary for him to fulfill his duties as guardian for Tamarcus's person.

¶51.    Ewing plead that he needed to "defend himself" by determining "what the terms of the settlement were to see if Mr. Ewing did anything improper with settlement proceeds" (this issue was resolved against him without appeal in 2010) was insufficient to require the

---

[29] *See* Maj. Op. at ¶ 10.

documents to be unsealed in 2014. Ewing never provided a single, pending civil or criminal complaint or demand against him, although he was given multiple opportunities to do so. Ewing also offered no legal authority to the chancellor or to this Court to support his request as an individual. His only stated reasons were abstract, vague, without substance, and without proof. It was Ewing's obligation to establish a legal right to unseal the documents. He failed.

¶52. The crux of Ewing's complaint revolves around his removal as guardian of the estate. Ewing never appealed his 2010 removal. That train left the station several years ago. The record is void as to where and from whom Ewing needs to defend himself. His removal was unrelated to the settlement amount, except for failing properly to account for monies that flowed into various guardianship accounts. The settlement amount was a set sum. The monthly annuity sums are no different than those deposited when Ewing held the position of guardian. His removal was for mismanagement of his son's money. The sealed documents do not reveal Ewing's misappropriation and mismanagement of Tamarcus's funds. Documents already delivered to Ewing and in his possession, i.e., bank account records, reveal the unauthorized withdrawals made by Ewing. Court records reveal the withdrawals were not approved by the court.

¶53.    Ewing cites *Williamson v. Edmonds*, 880 So. 2d 310 (Miss. 2004). *Williamson* is wholly distinguishable from this case. In *Williamson*, the Edmondses sought a declaratory judgment against their former attorney, Williamson.[30] *Id*. at 312. The Edmondses were real parties in interest, unlike in today's case. Williamson, a party, refused to turn over documents

_____

[30]Williamson represented the Edmondses and numerous others in Phen-Fen product liability litigation. *Id.* at 314.

24

requested in discovery, claiming the information was privileged and confidential. *Id.* The trial court granted the Edmondses' motion to compel and the ***Williamson*** Court granted interlocutory review. *Id.* at 314. That Court affirmed the trial-court judgment, holding that Williamson could not "shield himself from a motion to compel discovery based on the attorney-client privilege." *Id.* at 320. No claim of attorney-client privilege is made in today's case. ***Williams*** has no application to the case sub judice. No suit is pending against anyone–except a dutiful chancery clerk. There was a claim and suit against Williamson.

¶54. Likewise, ***Estate of Cole v. Ferrell***, 163 So. 3d 921 (Miss. 2012), cited by the majority, offers no relief to Ewing. Tamarcus and the defendants have a privacy interest.[31] ***Estate of Cole*** held that confidentiality should be preserved if (1) the settlement agreement was between private parties (Tamarcus and the settling defendants are private parties), (2) the settlement agreement did not involve public concerns (none expressed in agreements), and (3) the settlement agreement is not necessary to resolve a claim (no claim is pending). *Id.* at 929. All three prongs of the ***Estate of Cole*** were easily satisfied; therefore, the chancellor did not err in preserving confidentiality. Although these factors generally are applied by courts to seal documents, logic dictates that the same reasoning also should be taken into account when a request is made to unseal documents.

¶55. Ewing has failed to provide the trial court and this Court with authority that the order sealing the documents does not apply to him. Neither the trial court nor this Court is under

---

[31] The majority argues that, because Ewing once had access or privity to the documents, he should enjoy that status forever, citing no authority for such proposition. (Maj. Op. ¶ 22).

an obligation to consider arguments forwhich Ewing provides no authority. *See **Chantey***

***Music Pub., Inc. v. Malaco, Inc.***, 915 So. 2d 1052, 1060 (Miss. 2005); M.R.A.P. 28(a)(6).

In his "ARGUEMENT" [sic] and for the first time in all proceedings, Ewing claims he is

illiterate and was unable to read the settlement documents prior to signing them. He now

claims on appeal that his attorneys did not read the documents to him and that they refused

to allow anyone else to read the documents to him. Also for the first time on appeal, Ewing

now claims he has received some notice from the Internal Revenue Service (with no writings

to support this) that taxes were not paid for the year 2013. Ewing was not the guardian for

Tamarcus's estate in 2013. Ewing "is not entitled to raise a new issue on appeal, since to do

so prevents the trial court from having an opportunity to address the alleged error." ***West v.***

***West***, 891 So. 2d 203, 214 (Miss. 2004) (quoting ***Crowe v. Smith***, 603 So. 2d 301, 305 (Miss.

1992)).

*Frivolous Appeal*

¶56.    Despite the chancellor's finding that the chancery clerk was not a proper party to this

suit, Ewing identified the clerk as the appellee and continues to pursue a frivolous appeal.

*See* M.R.A.P. 38. He argues that the clerk's office "refused" his request for the settlement

documents and that the clerk "denied numerous requests." He further argues that the clerk

failed to make any argument at the hearing on his petition and thus should be prevented from

making an argument to this Court in this appeal. Ewing argues that the chancery clerk should

not be allowed to raise any issue before this Court that was not raised before the chancellor.

The clerk was dismissed by the chancellor, for she was not a proper party. As a matter of law,

the clerk was under no duty to provide the requested documents to Ewing. Thus, the chancery clerk must prevail on this appeal. The clerk is the custodian of the records, yet the clerk is duty bound to follow the orders of the court. The order in place requires the records to remain sealed. The clerk had no independent authority on her own to unseal the documents at the request of Ewing. His argument otherwise is unavailing and must be rejected. I would affirm the chancellor's order dismissing the clerk and would remand for a hearing on costs and expenses incurred by the clerk in defense of Ewing's frivolous petition before the trial court and this appeal.

### *Conclusion*

¶57. Ewing not only failed to fulfill the duties of his office, guardian of his son's estate; he violated the tenets of a guardian. He redirected annuity funds into a joint account after the court froze the guardianship account. When the GAL filed her report, she could not account for nearly $180,000 of guardianship monies moved at Ewing's behest. Despite the large sums of money at his disposal, Ewing incurred unnecessary nonsufficient funds and overdraft fees on numerous occasions. Ewing's actions required the court to appoint a guardian ad litem who has been paid over $32,000, none of which would the guardianship have incurred had Ewing fulfilled his duties and obligations.

¶58. The chancellor neither  erred in dismissing Ewing's petition nor in denying Ewing access to sealed documents. The chancellor properly dismissed his petition. Additionally, Ewing failed to present any factual or legal basis as to why the chancellor should unseal the record for Ewing. He has no interest in a settled action and has offered no evidence that he

has suffered damages as a result of the record being sealed. Ewing's petition and subsequent appeal is frivolous. It has no basis in law or fact. I respectfully dissent.

¶59.    The judgment of the chancellor should be affirmed and this case remanded to the chancellor to conduct a hearing on (1) whether sanctions are appropriate under Rule 11(b) of the Mississippi Rules of Civil Procedure, (2) whether the assessment of attorney fees and costs against Haughton and/or Ewing pursuant to the Litigation Accountability Act of 1988[32] are appropriate, and (3) whether damages are appropriate for violations of Rule 38 of the Mississippi Rules of Appellate Procedure.

**WALLER, C.J., MAXWELL AND BEAM, JJ., JOIN THIS OPINION.**

---

[32] *See* Miss. Code Ann. §§ 11-55-1 to 11-55-15 (Rev. 2010).