KING, Justice,
for the Court:
¶ 1. In this interlocutory appeal, Ford Motor Company (Ford) wishes to preserve a confidential settlement agreement between it and the Estate- and wrongful-death beneficiaries of Brian Cole (the Coles). The case on appeal is a separate action between the Coles, their attorneys, and among the attorneys themselves regarding expenses, a contingency-fee agreement, and a fee-sharing agreement. The chancellor denied Ford’s “Motion to Preserve Confidentiality of Settlement Agreement” and “Notice of Intent to Seek Closure of Proceedings and Sealing of Documents.”
¶ 2. Aggrieved, Ford raises three issues:
I.Whether the settlement agreement is a public, judicial record or a private contract, which should be enforced.
II. Whether the state’s policy encouraging settlement agreements and the parties’ interest in abiding by the terms of that agreement are sufficient grounds to protect the settlement from public scrutiny.
III. Whether there is any overriding public interest which would require disclosure of the terms of the settlement agreement.
We find that the settlement agreement is between private parties, does not involve issues of public concern, and is unnecessary to resolve the parties’ disputes. Thus, the chancery court erred, in part, by denying Ford’s motions.
FACTS AND PROCEDURAL HISTORY
¶ 3. In 2001, Brian Cole and Ryan Cole, cousins, were returning to Mississippi from Florida. During the drive, Brian’s Ford Explorer Sport rolled over, injuring Ryan and resulting in Brian’s death.
¶ 4. Thereafter, Gregory Cole, Brian’s brother, opened an estate and initiated a wrongful-death action against Ford. After two mistrials, the third trial resulted in a jury verdict against Ford. Before the trial proceeded to the punitive-damages phase, Ford and the estate reached a settlement agreement, which Ford contends is contingent upon the confidentiality of its terms.
¶ 5. Wayne E. Ferrell Jr., an attorney for the Coles, filed a separate action— “Petition for Accounting, Apportionment of Fees and Expenses and Declaratory Judgment and Request for Injunctive Relief’— in the Chancery Court of Jasper County and named Ford and other plaintiffs’ counsel as respondents. Several attorneys filed jointly an answer and cross-claim. Based on the filings, the attorneys were at odds regarding the expenses incurred by each and the ■ terms of their fee-sharing agreement. The Coles and the attorneys *923 also disputed which contingency-fee agreement was in place — either a forty percent or a fifty percent contingency-fee agreement. The parties wanted Ford simply to deposit the settlement funds into the court registry. Ford agreed, contingent upon the Coles submitting an order to dismiss the action with prejudice. The chancery court approved the terms of the settlement, ordered Ford to place the funds in an account, approved disbursement of the undisputed settlement amounts, and ordered the Coles to submit an order of dismissal of the wrongful-death case.
¶ 6. Before the fee-dispute trial, Ford filed a motion “to preserve the confidentiality of the settlement agreement between Ford and the Estate and other plaintiffs.... ” In its motion, Ford sought “to preserve the confidentiality of the settlement agreement, including the amount paid in settlement.” During the first hearing on the matter, the chancery court expressed its personal preference:
The confidentiality of the settlement is going to be an issue that I will need to address at some point. The fact that the parties agree that the settlement is confidential doesn’t make it so. I’ve got to have a good reason to do that. So, we will talk about that later. I’m just putting everybody on notice that the truth is I don’t normally do that. I have, but it’s not standard operating procedure.
Then, the chancery court instructed Ford to amend its motion, setting forth specific methods by which the terms of the settlement agreement could remain confidential. Afterwards, the parties reached an agreement regarding undisputed funds and asked the court to sign an order which allowed disbursal of the undisputed amounts and directed the order be temporarily under seal. Then, Ford filed its supplemental motion. In addition to requesting that the court preserve the confidentiality of the settlement terms, Ford requested that the court permanently seal the order allowing for disbursal of the undisputed funds — which revealed various amounts to be disbursed — and “any other documents setting forth information revealing, either directly or indirectly, the terms of the settlement agreement.” Ford requested specifically that:
[A]ny documents submitted to the Court and any orders of the Court which would reveal in any way the terms of the settlement agreement should be sealed and should remain so. In addition, Ford requests that the upcoming trial of this matter, or any other hearing in which specific amounts of distribution of funds are to be discussed, be closed to the public and the transcripts of such proceedings sealed.
Ford’s motions went unopposed. Also, Ford and the Coles filed a joint motion requesting the chancery court to file the order under seal until it determined whether it should remain sealed. In agreement, the chancery court filed the order under seal until further notice.
¶ 7. Prior to the second hearing, Ford filed its “Notice of Intent to Seek Closure of Proceedings and Sealing of Documents.” The chancellor denied Ford’s motion. The court noted that the sealing of trial-court records is within its discretion and that, because the parties asked the chancellor to review the terms of the settlement agreer ment, the public had a right to access the records and court proceedings. The chancellor also stressed the judiciary’s duty to conduct business in the open. Relying on the Public Records Act, the chancellor determined that the public’s right to access trumped the state’s policy favoring settlement agreements, stating that:
[Proceeding charily, this Court is of the opinion that Ford Motor Company has *924 wholly failed to establish any overriding, compelling reason to overcome either the common law or constitutional presumption of public access to judicial records. In balancing the factors favoring secrecy against the common law presumption of access, this Court cannot find that the interest of Ford Motor Company in keeping this settlement secret outweighs not only the right of the public to access, but the duty of the judiciary to conduct its business in the open, in the'light of day, beyond reproach and without any interference of impropriety or favoritism.
Accordingly, the court denied Ford’s motions to maintain the confidentiality of the settlement agreement, to seal the records, and to close the proceedings.
¶ 8. Ford sought a stay of the court’s order pending the results of an interlocutory appeal. The chancellor granted the stay. Ford filed an interlocutory appeal, which this Court granted on August 31, 2011. In response, Ferrell and Nobles (the Attorneys) filed an appellee’s brief, supporting the chancellor’s rulings.
ANALYSIS
I. Standard of Review
¶ 9. The parties do not agree on the appropriate standard of review. Because the chancery court found that it lacked authority to seal the documents absent a rule or statute, Ford contends this ruling is an error of law and should be reviewed de novo. Conversely, the Attorneys argue that whether to seal judicial records is within the court’s discretion; thus, it should be reviewed for an abuse of discretion.
¶ 10. In certain cases, trial courts must seal records to protect information. See, e.g., Miss.Code Ann. §§ 25-61-9 (Rev. 2010) (limiting public access to trade secrets and confidential commercial or financial information); 43-21-261 (Rev.2009) (limiting disclosure of youth-court records). No statute or rule requires confidentiality in this specific case. But parties may request that the trial court seal certain documents. And the trial court may, in its discretion, limit the public’s access to those records. See Miss.Code Ann. § 25-61-11 (Rev.2010). .
¶ 11. Whether the court has authority to limit the public’s access to judicial records is a question of law and, thus, is reviewed de novo. See In re Adoption of Minor Child, 931 So.2d 566, 571 (¶ 7) (Miss.2006) (“However, where on review it is apparent the court below has misapprehended the controlling rules of law or has acted pursuant to a substantially erroneous view of the law, we will proceed de novo and promptly reverse.”) But when determining whether the action taken by the court is proper, we review for an abuse of discretion. See Miss.Code Ann. § 25-61-11 (Rev.2010). During the hearing and its order, the chancery court made comments about its lack of authority to seal the settlement agreement. However, the chancellor did act by balancing the parties’ competing interests-the public’s right of access versus confidentiality. Because we must determine whether the actions taken by the chancellor were proper, we review for an abuse of discretion.
II. Preserving the Confidentiality of the Settlement Agreement
¶ 12. Ford wants the order approving the settlement agreement kept under seal, and Ford contends that the settlement agreement should not be admitted into evidence during the fee-dispute proceedings. If the settlement agreement is admitted into evidence, Ford wants any mention of the settlement amount redacted from pleadings and the trial transcript and *925 wants those portions of the proceeding, in which the settlement amount is discussed, closed to the public. The Attorneys want all aspects of the proceedings to remain open to the public. Based on the Public Records Act, the Attorneys suggest the court must perform a balancing test to determine whether this settlement agreement should be sealed.
A. Public Access to Public Records
¶ IS. The settlement agreement itself is not yet a part of the record. But Ford is concerned that the settlement amount can be discerned from the chancellor’s order, which approves the settlement agreement. According to Ford, the chancery court erred when it ruled that the order was a public record, denying its motion to preserve the confidentiality of the settlement agreement. Ford argues that the settlement agreement is a private contract, which should be sealed.
¶ 14. Conversely, the Attorneys argue that it is within the chancellor’s discretion whether to seal judicial records, and under the Public Records Act, the settlement agreement should be available to the public. The Attorneys also maintain that Ford must “make a particularized showing of a need for confidentiality, including whether the unsealed documents will result in significant harm to either party,” which the chancellor found Ford failed to do.
¶ 15. If the settlement agreement were filed with the chancery court, it could be subject to the Public Records Act. See Miss.Code Ann. §§ 25-61-1 to 25-61-17 (Rev.2010). The Act provides that “[i]t is the policy of the Legislature that public records must be available for inspection by any person unless otherwise provided by this act.” Miss.Code Ann. § 25-61-1. Court filings are considered to be public records, unless otherwise exempted by statute. Pollard v. State, 205 So.2d 286, 288 (Miss.1967); Henry v. Miss. Dep’t of Employment, 962 So.2d 94, 98 (¶ 10) (Miss.Ct.App.2007).
¶ 16. However, parties may file documents under seal, and the Act does not conflict with the court’s authority to declare a public record confidential or privileged. Specifically, Section 25-61-11 addresses exempt or privileged records, providing that:
The provisions of this chapter shall not be construed to conflict with, amend, repeal or supersede any constitutional or statutory law or decision of a court of this state or the United States which at th'e time of this chapter is effective or thereafter specifically declares a public record to be confidential or privileged, or provides that a public record shall be exempt from the provisions of this chapter.
Miss.Code Ann. § 25-61-11 (emphasis added). Thus, Ford’s contention is correct. A court may, within its discretion, determine if nonexempt matters should be declared confidential or privileged, removing those records from public disclosure.
B. Policy Favoring Settlement
¶ 17. The chancellor determined that Ford had not established “any overriding compelling reason to overcome either the common law or constitutional presumption of public access to judicial records.” Ford argues that the state’s policy favoring settlement was enough to overcome that presumption, and the chancellor erred by not considering it. The Attorneys maintain that the chancellor did take this into consideration, but the court, in its discretion, ruled in favor of the public’s right to access.
¶ 18. Although Mississippi law favors public access to public records, “public policy [also] favors the out-of-court compro *926 mise and settlement of disputes.” M.R.E. 408 cmt. This Court has stated that:
[CJompromise reached by way of mediation or otherwise, is favored in the state of Mississippi. Moreover, the law favors the settlement of disputes by agreement of the parties and, ordinarily, will enforce the agreement which the parties have made, absent any fraud, mistake, or overreaching.
Chantey Music Publ’g., Inc. v. Malaco, Inc., 915 So.2d 1052, 1055 (¶ 11) (Miss.2005). The Court of Appeals also has held that “[sjettlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits.” Parmley v. 84 Lumber Co., 911 So.2d 569, 573 (¶ 22) (Miss.Ct.App.2005) (citations omitted), cert. denied, 920 So.2d 1008 (Miss.2005).
¶ 19. Generally, confidentiality helps facilitate settlement and, in turn, conserves judicial and private resources. Hasbrouck v. BankAmerica Housing Serv., 187 F.R.D. 453, 458-59 (N.D.N.Y.1999). Thus, public policy provides a basis for preserving the confidentiality of settlement agreements when practical. Id. Conversely, failure to preserve confidentiality could discourage settlement. Id. The Northern District Court of Illinois has noted that:
In fact, confidential settlement agreements are likely in the long run to best serve the interests of the public and the parties alike: “[WJhatever the value of disclosure, it should not obscure the strong public interest in, and policy objectives furthered by, promoting settlement.”. Thus, “absent special circumstances, a court should honor confidentialities that are bargained-for elements of settlement agreements.”
Grove Fresh Distrib., Inc. v. John Labatt Ltd., 888 F.Supp. 1427, 1441 (N.D.Ill.1995) (citation omitted). Because confidentiality is a “bargained-for element” of this settlement agreement, it should be respected, if practical. ■
C. Balancing Test
1. Public v. Private
¶ 20. These cases favor the public’s right to access. In State Farm, several media outlets sought to unseal the settlement agreement and transcript of proceedings between State Farm and the Mississippi Attorney General. State Farm Fire and Cas. Co. v. Hood, 2010 WL 3522445, *1 (S.D.Miss. Sept. 2, 2010). The court, in its order, articulated a balancing test to weigh the need for confidentiality against the public’s right to access. Id. at *2. The court recognized the public policy favoring settlement and the important role confidentiality plays in these agreements. Id. On the other hand, the court noted that this settlement involved a public entity, which is a matter of public concern. Id. at **2-3. Finding the public’s right to access prevailed, the court unsealed the record. Id.
¶ 21. The Attorneys also cite Marcus v. St. Tammany Parish School Board, 1997 WL 313418 (E.D.La. June 9, 1997) to support their position. In Marcus, a newspaper fought for the right to obtain a sealed settlement agreement and transcript. Marcus, 1997 WL 313418, at *1. The court upheld one confidentiality order, which protected the identity and personal information of the victim. Id. at **6-7. But the court vacated a second order, which prohibited the parties from divulging details about the settlement. Id. at **7-8. The court reasoned that “the public’s interest is particularly legitimate and important where, as in this case, at least one of the parties to the action is a public entity *927 or official ... [this] factor weighs against entering or maintaining an order of confidentiality.” Id. at *5.
¶ 22. Ford cites a similar Fifth Circuit case. In this case, the district court sealed the transcript and settlement agreement between the parties. SEC v. Van Waeyenberghe, 990 F.2d 845, 848 (5th Cir.1993). The Securities and Exchange Commission (SEC) did not want the documents filed under seal and, therefore, appealed. Id. The Fifth Circuit noted that whether to seal a judicial record is within the sound discretion of the trial court. Id. And in determining whether to seal a record, the court must balance the public’s right to access against interests favoring nondisclosure. Id. The court recognized that the public’s common-law right to access was not absolute. Id. at 848. But, because this case concerned compliance with federal securities laws, public policy favored the public’s right to access. Id. at 850. The judgment was reversed and the case remanded because the district court failed to perform the balancing test. Id. at 849.
¶ 23. The chancery court failed thoughtfully to consider the status of the parties involved in this suit. State Farm, Marcus, and SEC all involve public entities and matters of greater public concern; Ford’s case does not. “If a case involves private litigants, and concerns matters of little legitimate public interest, that should be a factor weighing in favor of granting or maintaining an order of confidentiality.” State Farm, 2010 WL 3522445, at *2. (citations omitted). The chancellor focused more on the public’s right to access versus the state’s policy favoring settlement agreements, stating “neither court has ever articulated a policy concerning the sealing of court files or orders based strictly upon the agreement of the parties.” As the chancellor stated, “[t]he fact that the parties agree that the settlement is confidential doesn’t make it so.” But, when practical, our appellate courts have respected confidential settlement agreements between private litigants.
2. Respecting Confidential Filings
¶ 24. Our appellate courts respect confidential filings. Mississippi Rule of Appellate Procedure 48(A) provides that:
Any case filed with the clerk of the Supreme Court and Court of Appeals which was previously closed to the public by action of the trial court or which by statute is subjected to restriction on access to the public in the trial court by statute, shall be closed to public access in the appellate courts and shall be treated as a confidential case by the clerk of the appellate courts.
M.R.A.P 48(A). In Braddock Law Firm, PLLC v. Becnel, 949 So.2d 38 (Miss.Ct.App.2006) a lawyer sued several other lawyers, alleging they had breached their fee-splitting agreement. Braddock, 949 So.2d 38, 41 (¶ 1) (Miss.Ct.App.2006). The parties sought to maintain the confidentiality of the underlying settlement agreement. Id. at 42 n. 1. Respecting that confidentiality, the Court of Appeals noted that:
Because this case involves the settlement of cases,, the Court has granted the parties’ request to enforce the confidentiality agreement between the clients, Attorneys, and defendant manufacturer. Pursuant to the agreement, the names of the clients and the defendant manufacturer and the terms of settlement will remain confidential.
Id. Braddock is similar to Ford’s case. Both cases were settled out of court; those settlements contained confidentiality clauses; and the lawyers later sued each other regarding their fee-splitting agreements. In respecting the parties’ confidentiality agreement, the Court of Appeals was able to resolve the lawyers’ dispute without divulging the terms of the settlement.
*928 ¶ 25. Williamson v. Edmonds, a Mississippi Supreme Court case, is not directly on point but still relevant. In Williamson, a lawyer, representing thirty-one clients, refused to let clients see certain settlement documents, claiming the documents were confidential per the settlement agreement. Williamson, 880 So.2d 310, 313-14 (¶¶ 2-8) (Miss.2004). The clients sued the lawyer, alleging that he had breached his duty of loyalty. Id. at 313 (¶ 1). This Court found that the lawyer could not use the confidentiality provision against the clients; thus, the clients were entitled to see those documents. Id. at 319-21 (¶¶ 24-30). In pertinent part, the Court reasoned that “[t]he confidentiality agreement and the QSF order were put into place to prevent public dissemination of any information indicating the existence of litigation or settlement, not to prevent the [clients] from obtaining information relating to the case they participated in as plaintiffs.” Id. at 321 (¶ 30). So, in Williamson, this Court recognized an interest in shielding confidential settlement agreements from public scrutiny.
¶ 26. Ford does not contend that all settlement agreements should remain confidential. It recognizes a public interest in some cases. Ford states, for example, that hundreds of claims regarding pollution of drinking water would concern the public as a whole and, thus, should not remain confidential. But, as we mentioned, no matter of great public concern exists in this case. We also find the settlement agreement is not needed to resolve the parties’ claims.
3. Relevance
¶ 27. On appeal, the Attorneys argue that the settlement agreement goes to the heart of their petition; thus, the chancellor properly refused to preserve its confidentiality. However, during this Court’s oral argument on the matter, the Attorneys did not take issue with preserving the confidentiality of the settlement amount. Ford claims the settlement agreement is irrelevant to the fee-dispute claims and, thus, is unnecessary to resolve the dispute. We agree.
¶ 28. In Bank of America v. Hotel Rittenhouse Associates, 800 F. 2d 339 (3d Cir.1986) a contractor moved to unseal settlement documents in a case between a bank and project developer. Bank of America, 800 F.2d 339, 340-41 (3d Cir.1986). The district court denied the motion. Id. at 341. On appeal, the Third Circuit found that the district court had abused its discretion. Id. at 344-46. Because the parties had filed the settlement with the district court and had asked the court to interpret its terms, the Third Circuit determined that the parties were not entitled to invoke the confidentiality normally afforded to settlement agreements. Id.
¶ 29. But in Ford’s case, the terms of the settlement agreement are not in dispute. The parties quibble over separate issues — expenses, the contingency-fee agreement, and the fee-sharing agreement — none of which has anything to do with the terms of the settlement. No other public interest favors disclosure of the settlement amount. As succinctly stated in this federal-court case:
The Court agrees with the Plaintiff that the settlement amount should remain confidential. The “amount” has no bearing on this case and would serve no purpose except to prejudice the Plaintiff. The settlement agreement was signed by all parties and specified it would be “confidential as to amount.”
Cooper Tire & Rubber Co. v. Farese, et al., No. 3:02CV210-SA, 2008 WL 4285546 (N.D.Miss. Sept. 12, 2008).
¶ 30. The contingency-fee and fee-sharing agreements can be (and must be) resolved by mention of percentages. The *929 chancellor does not have to specify the dollar amount each attorney should receive based on that percentage. Because the settlement agreement is not needed to resolve the parties’ claims, its terms are irrelevant to this proceeding.
D. Relief
¶ 31. This case has been tried three times previously, so the record of those trials is available to the public. Ford wishes to preserve the confidentiality of the settlement agreement, specifically, the amount of the settlement. As previously noted in Braddock and Williamson, our appellate courts have respected parties’ desires to preserve confidentiality of settlement agreements when practical.
¶ 32. Thus far, the parties have managed not to disclose the terms of the settlement agreement. To continue to preserve the confidentiality of this agreement, the chancery court should seal the order approving the settlement agreement and should seal the settlement agreement itself (if it is admitted into evidence for any reason). The chancery court should also redact any mention of the settlement amount from future documents and prohibit the parties from mentioning the settlement amount in its proceedings. However, the chancery court may keep the fee-dispute trial’s transcript and proceedings open to the public, which addresses the chancellor’s concern regarding transparency in judicial proceedings.
CONCLUSION
¶ 33. The chancery court abused its discretion by denying Ford’s request to preserve the settlement agreement’s confidentiality. Although the public has a right of access to public records, Mississippi law also favors the settlement of litigants’ disputes and respects confidentiality agreements when practical. The law allows courts to determine when information should be declared confidential or privileged, exempting it from the Public Records Act. Because this settlement agreement is between private parties, does not involve matters of public concern, and is not necessary to resolve the fee-dispute claim, its confidentiality should be preserved. Thus, we reverse the chancellor’s denial of Ford’s motion to preserve the confidentiality of the settlement agreement. However, the fee-dispute trial’s transcript and proceedings should remain open to the public, so we affirm the chancellor’s denial of Ford’s motion to close the proceedings. The Court remands this case to the chancery court for further proceedings consistent with this opinion.
¶ 34. AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
WALLER, C.J., CARLSON, P.J., CHANDLER AND PIERCE, JJ., CONCUR. KITCHENS, J., CONCURS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH AND LAMAR, JJ. DICKINSON, P.J., JOINS IN PART.