DICKINSON, PRESIDING JUSTICE,
FOR THE COURT:
¶1. A father who had served as guardian for his minor child when the chancery court approved a settlement agreement for that minor child sought a copy of the sealed settlement documents after he had been removed as guardian. The chancellor denied his request. But because he had access to those documents as guardian and participated in the settlement process, no purpose was served by keeping the sealed documents from him. So, we reverse and remand with instructions for the chancellor to grant him access to the document^.
FACTS AND PROCEDURAL HISTORY
¶2. Tamarcus Ewing — a minor — and his mother were involved in a motor-vehicle accident. Tamarcus sustained severe injuries and his mother died. On March 5, 2002, the' Chancery Court of Noxubee County appointed Tommy Lee Ewing— Tamarcus’s father — guardian of Tamar-cus’s person and estate. Tommy filed a complaint on behalf of Tamarcus in the Circuit Court of Noxubee County, alleging negligence by multiple defendants. The complaint sought damages for both the injuries Tamarcus sustained and the wrongful death of his mother.
¶3. At some point, the parties settled the circuit-court case. On September 29, 2003, the Noxubee County Chancery Court sealed the guardianship case file on stipulation and agreement of the parties and attorneys of record in the circuit-court action. The Noxubee County Chancery Court then authorized the acceptance of the settlement on November 17,2003.
¶4. On April 14, 2006, the Noxubee County Chancery Court transferred Ta-marcus’s guardianship proceeding to the Lowndes County Chancery Court. The transfer order states that the case was to “remain sealed,” but the guardian could view the file once filed and docketed with the clerk’s office in Lowndes County. An identical transfer order was entered by the Lowndes County Chancery Court.
¶5. On October 30, 2009, James C. Patton — the attorney for the guardianship— petitioned the Chancery Court of Lowndes County to appoint a guardian ad litem for Tamarcus. He alleged that Tommy had mismanaged Tamarcus’s funds. A guardian ad litem was appointed and ordered to investigate Tamarcus’s “situation in all respects, including, but not limited to ... the financial aspects of his guardianship.”
¶6. On July 21, 2010, the chancellor removed Tommy as guardian of Tamarcus’s estate after finding that seventy-five thousand dollars in annuity payments had been redirected from a frozen guardianship account into an unfrozen account jointly owned by Tommy and Tamarcus. The court also found that Tommy had spent those funds without court approval. Chokwe Lumumba and Roy A. Perkins were appointed as coguardians of the estate. Tommy was not removed as the guardian of Tamarcus’s person.
¶7. On July 26, 2013, Tommy petitioned the court for an order requiring Perkins to render an accounting of Tamarcus’s estate. In his petition, Tommy alleged that Perkins had refused his requests for an accounting, and because of this, Tommy did not know the location or amount of estate *683 assets. Nothing in the record indicates whether an accounting was ordered or whether the court held a hearing regarding Tommy’s petition. On September 13, 2013, Tommy filed a motion asking the court to enter an order substituting Roberta L. Haughton for Perkins as guardian of Tamarcus’s estate. This motion was set to be heard on November 19, 2013, but nothing in the record indicates whether the hearing took place.
¶8. On May 26, 2014, Tommy sent a letter to Lisa Younger Neese — the Lowndes County Chancery Court Clerk— requesting a copy of the settlement documents relating to the Noxubee County personal-injury and wrongful-death case. Nothing in the record indicates whether Neese responded to Tommy’s letter.
¶9. On July 14, 2014, Tommy filed his “Petition for Unredacted Copies of any and all Settlement Documents Contained in the Estate of Tamarcus Ewing, a Minor from the Underlying Personal Injury Wrongful Death Case Filed in Noxubee County Circuit Court.” He named Neese and Perkins as respondents. In his petition, Tommy alleged that he had never received a copy of the settlement documents and did not know the terms of the settlement despite signing the settlement papers. Tommy claimed that, without the settlement documents, he was unable to defend himself against the accusations made by Patton. He further alleged that the Chancery Court Clerk’s office refused to give him copies of the settlement documents. Tommy argued that, because he was a party to the underlying personal-injury and wrongful-death action, the order sealing the case filé did not apply to him and that he was entitled to copies of the settlement documents. Tommy asked the court to enter an order requiring the clerk’s office to give him an unredacted copy of all settlement documents.
¶10. The chancellor held a hearing on Tommy’s petition. At the hearing, Tommy’s attorney stated that Perkins was not a proper party to the action. The chancellor dismissed Neese from the proceeding and ruled that she was not a proper party because she was simply following the court’s order sealing the file. After dismissing Neese, the judge treated Tommy’s petition as a motion. Tommy argued that not having the documents had “caused him a lot [of] problems” and he needed a copy for his records. The chancellor ruled that Tommy was not entitled to copies of the settlement documents because he was not a party to the action and therefore lacked standing to make the request.
¶11. The court entered an Order of Dismissal of Tommy’s petition on September 29, 2014. The order provides that Neese was not a proper party; Tommy was not, nor ever had been, a party to the lawsuit, and he therefore had no standing to bring the petition; the terms of the settlement were sealed at the request of the parties with their full knowledge and disclosure; and Tommy’s stated reasons for unsealing had no basis in law. Tommy appealed.
ANALYSIS
¶12. Tommy raises three issues. He first argues that the chancery court file never was sealed to begin with. Next, he contends that he is entitled to a copy of the settlement documents because he was a party to the underlying personal-injury and wrongful-death action that resulted in the settlement. Finally, he argues that Neese had failed to respond to his petition, had presented no defense at the hearing, and therefore is procedurally barred from raising any defenses on appeal.
I. The case file was sealed.
¶13. Tommy contends that the chancellor relied on an order that sealed the *684 Noxubee County Circuit Court action, but not the Lowndes County Chancery Court file. This, however, is incorrect. The order in question was entered on September 29, 2003, by the Noxubee County Chancery Court for Cause Number 2002-21.[1] It provides that the subject file shall be sealed “as. per stipulation and agreement of all the parties and counsel of record in Civil Action Number 2002-095 in the Circuit Court of Noxubee County, Mississippi.”
1114. Tommy mistakenly believes that this order sealed the Noxubee County Circuit Court action apparently because, that case’s cause number is mentioned in the order. But the above-quoted text simply means that all of the parties and counsel of record in the circuit-court action stipulated to and agreed to seal the estate case’s file. Furthermore, when the estate case was transferred from Noxubee to Lowndes County, the transfer orders stated that the ease was to remain sealed as previously ordered by the court.
II. Tommy was entitled to the settlement documents.
1115. The chancellor held that Tommy did not have standing to bring his petition because he was not a party to the estate case. However, this case is not about standing, nor is it — as the dissent incorrectly suggests — -whether the documents at issue should be uh-sealed. Tommy does not seek to intervene in any case or litigation, and he has not requested the documents be unsealed. He seeks no more than access to the sealed documents, and the question before us is whether he should be granted access.
1116.The chancellor held that Tommy’s stated reasons for unsealing the documents had no legal basis. On appeal, Tommy argues that the sealing order does’ not apply to him because he was a party to the underlying personal-injury and wrongful-death action that resulted in the settlement agreement. •
1117. In Estate of Cole, this Court recognized that Mississippi “favors access to public records,” while public policy favors out-of-court settlements.[2] As a result, courts must balance[3] the public’s right to access with private interests favoring confidentiality when deciding whether or not to seal a' case.[4] Public interests favoring access include cases with at least one party that is a public entity or public official, or cases involving matters of public concern.[5] On the other hand, private interests favoring the granting of confidentiality include cases with private litigants concerning matters that are not of public concern,[6] agreements that would protect the identity of victims,[7] and “shielding confidential set *685 tlement agreements from public scrutiny.”[8]
¶18. The dissent’s reliance on the Estate of Cole test — which addressed whether a settlement agreement should remain sealed from the general public — is misplaced. That test is not relevant here, as no party has challenged the chancellor’s decision to seal the documents. Ewing merely seeks access to the documents— which he concedes will remain sealed as to the general public — for his personal use. The dissent cites no authority that would support denying Ewing access.
¶19, In Williamson v. Edmonds, this Court found that confidentiality agreements and sealing orders are not intended to prevent individuals from obtaining information about cases in which they participated.[9] Former clients brought a claim against an attorney who previously had negotiated a settlement for them.[10] The terms of that settlement agreement were sealed by the trial court, and the clients executed a confidentiality agreement in exchange for the settlement funds.[11] In the subsequent litigation, the attorney refused to answer the client’s discovery requests, alleging they violated attorney-client privilege and the confidentiality agreement signed by the clients in the settlement case.[12]
¶20. On interlocutory appeal, this Court held that the confidentiality agreement and sealing order were in place “to prevent public dissemination” of the litigation and settlement, “not to prevent the [clients] from obtaining information' relating to the case they participated in as plaintiffs.”[13] And contrary to the dissent’s contention, Williamson’s relevant holding did not in any respect turn on the existence of the attorney-client privilege, but rather, on the purpose for orders sealing documents: to prevent public dissemination. •
¶21. Like the clients in Williamson, Tommy is seeking information relating to a case in which he participated. While he was not a plaintiff in the personal-injury and wrongful-death case, Tommy participated as Tamarcus’s Next Friend and general guardian. As Tamarcus’s Next Friend and guardian, Tommy was privy to all aspects of the circuit-court case and — more importantly — the settlement agreement. In fact, Tommy signed the settlement agreement and other documents relating to the settlement. Furthermore, as the guardian of Tamarcus’s estate from 2002 until his removal in 2009, Tommy had access to all of the financial information relating to the estate, including the settlement agreement.
¶22. While, it is true that courts have discretion- to seal, and refuse access to, documents, that discretion may be exercised only where a legal basis to do so exists. Here, the legal basis for sealing the settlement documents was privacy.. Because Tommy was privy to all the details of the sealed settlement agreement, no interest in privacy is advanced by keeping the documents from him.
¶23. The dissent flips this analysis on its head, focusing only on Ewing’s perceived lack of need for the information, with no attention to the true issue of a need for privacy. Our law clearly predicates denial of access to sealed documents on an inter *686 est in privacy and here, the person requesting access actually participated in the settlement and has had access to the documents, so no interest in privacy can be served by keeping the documents from him. The dissent’s extensive and tortured recitation and characterization of Tommy’s title and conduct has no bearing on the issue before us for decision.[14]
¶24. Therefore, we hold that the chancellor erred by denying Tommy’s request for a copy of the settlement documents.
III. Neese’s Failure to Respond
¶25. Tommy also argues that Neese is barred from presenting a defense on appeal because she failed to put on a defense at trial. In any event, Neese’s arguments on appeal are unavailing. As appellee, Neese argues that Tommy failed to serve her in a manner consistent with the Mississippi Tort Claims Act. She also argues that Tommy has filed a frivolous appeal in violation of the Mississippi Litigation Accountability Act and asks the Court to award her attorney’s fees and other costs of defending the appeal.
¶26. Because we rule in Tommy’s favor, his appeal was not frivolous. As for his failure to serve notice on Neese in a manner consistent with the Tort Claims Act, the chancellor dismissed Neese as an improper party and treated the petition as a motion without a respondent, rendering notice irrelevant. Further, the Tort Claims Act applies to a “claim,” and Tommy’s request for documents does not fit the statutory definition of a claim. Mississippi Code Section 11-46-1 defines a claim as “any demand to recover damages from a governmental entity as compensation for injuries.”[15] Tommy seeks documents, not damages.
CONCLUSION
¶27. Because Tommy was a participant in the personal-injury case and was privy to the terms of the settlement agreement, we reverse the chancellor’s ruling denying Tommy an unredacted copy of the settlement documents and remand the case to the Lowndes County Chancery Court for proceedings consistent with this opinion.
¶28. REVERSED AND REMANDED.
LAMAR, KITCHENS, KING AND COLEMAN, JJ., CONCUR. RANDOLPH, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., MAXWELL AND BEAM, JJ.

. This is the estate case’s cause number before it was transferred to the Lowndes County Chancery Court.

. Estate of Cole v. Ferrell, 163 So.3d 921, 926 (Miss.2012).

. The record before us does not reflect that the chancellor conducted any such balancing. But Tommy has not argued that the case should not have been sealed. Rather, he only has contended that the chancellor should have given him access to the sealed documents.

. Estate of Cole, 163 So.3d at 926 (citing State Farm Fire and Cas. Co. v. Hood, 2010 WL 3522445, *2 (S.D.Miss. Sept. 2, 2010)).

. Estate of Cole, 163 So.3d at 926 (citing State Farm Fire and Cas. Co., 2010 WL 3522445 at *2).

. Estate of Cole, 163 So.3d 921, 927 (Miss.2012) (citing State Farm Fire and Cas. Co., 2010 WL 3522445, at *2).

. Estate of Cole, 163 So.3d 921, 926 (Miss.2012) (citing Marcus v. St. Tammany School Board, 1997 WL 313418, **6-7 (E.D.La. June 9, 1997)).

. Estate of Cole, 163 So.3d at 928.

. Williamson v. Edmonds, 880 So.2d 310, 321 (Miss.2004).

. Id. at 312, 314.

. Id. at 314.

. Id. at 313.

. Id. at 321.

. The dissent incorrectly concludes that we have not examined the facts in the record it uses to attack Ewing's character and conduct. We indeed have examined them, but find them irrelevant to the question before us. To be clear, the issue is not whether Ewing properly was removed as guardian, nor is it whether he has a colorable interest in any pending litigation, rather, the issue is whether Ewing is entitled to view the records.

. Miss. Code Ann. § 11-46-1 (a) (Rev. 2012).