RANDOLPH, PRESIDING JUSTICE,
DISSENTING:
¶29. With all due respect, I am constrained to dissent to my distinguished colleague’s opinion. My reasons are legal and factual. I agree with the majority that the standard of review is de novo for questions of law, such as the issue of standing. See Vaughn v. Vaughn, 798 So.2d 431, 434 (Miss.2001). However, the issue of standing can be dispensed readily, as is discussed more fully below. There is no legal principle or caselaw to support Ewing’s argument that he has standing in a nonexistent civil action or in a guardianship in which he was disqualified as guardian for the estate of the ward. This leaves this Court to review the chancellor’s ruling to *687 deny a nonparty’s motion to access sealed records under an abuse-of-discretion standard.
¶30. “This Court has a limited standard of review in examining and considering the decisions of a chancellor.” Ballard v. Commercial Bank of DeKalb, 991 So.2d 1201, 1204-05 (Miss.2008). This Court will not disturb the findings of the chancellor unless the chancellor was “manifestly wrong, clearly erroneous, or applied an erroneous legal standard.” Tinnin v. First United Bank of Miss., 570 So.2d 1193, 1194 (Miss.1990). “Where the chancellor’s findings are supported by substantial evidence, this Court is without authority to disturb his or her conclusions, although this Court might have found otherwise as an original matter.” Dew v. Langford, 666 So.2d 739, 742 (Miss.1995). “Abuse of discretion is the most deferential standard of review appellate courts employ.” Ashmore v. Miss. Auth. on Educ. Television, 148 So.3d 977, 982 (Miss.2014). When we abide by this standard, we “must affirm the decision, regardless of what any of us individually might have ruled had we been the judge, unless there is a definite and firm conviction that the court below committed clear error.” Ferguson v. Univ. of Miss. Med. Ctr., 179 So.3d 1060, 1064 (Miss.2015) (internal citations omitted). I think we all can agree (although the majority’s position is unstated) that no judge in his or her right mind would entertain a suit such as this one, against his or her own clerk, praying for the clerk to disobey an order issued by the court it serves. Thus, Ewing cannot verily argue that Chancellor Colom’s decision was clearly erroneous, grossly unsound, or unreasonably illegal. See Abuse of Discretion, Black’s Law Dictionary (10th ed. 2014) (“An appellate court’s standard for reviewing a decision that is asserted to be grossly unsound, unreasonable, illegal, or unsupported by the evidence.”).
¶31. The majority posits my review of the record is extensive[16] and tortured.[17] However, not one fact mentioned in this dissent is claimed by the majority to be misstated or misrepresented. I agree with the former and reject the later. As today’s majority author, Presiding Justice Dickinson, previously has written, “our duty [] requires us carefully to scrutinize every case.” Bluewater Logistics, LLC v. Williford, 55 So.3d 148, 156 (Miss.2011). ‘Yet our duty requires us in every case to be as careful and as sensitive to error as we can be, and we cannot condone a standard that allows us to be less sensitive to error in one case than in another.” Id. A disinterested review of the trial court record fails to identify any facts or legal arguments which support reversal. The trial record reveals innumerable egregious acts by Ewing which led to his removal as guardian, years before this frivolous proceeding was filed against the chancery clerk of Lowndes County, followed by this frivolous appeal, naming the chancery clerk of Lowndes County as appellee.

Chancery Court Proceedings

¶32. On March 5, 2002, Tommy Ewing Jr. (“Ewing”) was appointed upon his application to be guardian of his son (“Ta-marcus”) and his son’s estate in the Chancery Court of Noxubee County, after Tamarcus’s mother was killed in a car accident, in which Tamarcus was injured.[18] *688 Ewing was required to file annual ac-countings. Pursuant to statute, Ewing, upon separate application to the chancery court, sought and obtained permission to file a wrongful — death and personal-injury lawsuit in his representative capacity “for the use and benefit of [the] ward,” Ta-marcus.[19] His name, although included in the style of the civil action, was solely in a titular capacity. Thus, Ewing as a party existed in name only, for he had no claim. He was neither a real nor actual plaintiff. In September 2003, Ewing, in his role as guardian, moved the court to seal the file of the civil suit. A settlement of Tamar-cus’s personal injury and sole wrongful-death beneficiary claims was approved by the chancellor in November 2003.[20] The civil case was dismissed in December 2003.
¶33. As early as August 2004, Ewing was requesting per diem and mileage expense payments for the time spent with his son after the accident.[21] During the pen-dency of this present action, Ewing informed the chancellor that he was disabled. The record before us reveals no independent source of income or benefits for Ewing.
¶34. In March 2005, Ewing filed a Petition for Review, requesting that he be allowed to review the sealed file to determine:
the total amount of settlement proceeds tendered by each and every defendant in the instant case;
the total amount of attorneys fees [sic] tendered to each and every attorney participating in the instant case;
the total amount of proceeds tendered on behalf of the minor child Tamarcus Ewing and the mechanism for disbursing those funds;
that the Court' issued [sic] an order determining whether' a full and final dispersal of all funds has been accomplished in accordance with the settlement, and a full payment of expenses.
The petition was set for hearing and provided notice to counsel for the defendants in the original civil suit. (Today’s petition provided notice to neither the attorneys for Tamarcus and/or the guardianship, nor counsel for the defendants.). Nothing in the record indicates Ewing sought or obtained a ruling on that petition.
¶35. A year later, the guardianship was transferred upon Ewing’s request from Noxubee County to Lowndes County, where Ewing and Tamarcus lived in a house paid for out of funds from the guardianship.[22] In the 2006 order transferring the guardianship, the chancellor specifically provided permission for the guardian, then Ewing, to view the entire file upon filing and docketing in Lowndes County. No record evidence reveals-that Ewing afforded himself that opportunity in his role as guardian. After a subsequent pleading was filed improperly in Noxubee County, the chancellor again stated that the guardianship had been transferred to Lowndes County, and the record would *689 remain sealed; yet, once again, Ewing, in his role as guardian, was permitted to view the record.
¶36. Through the five years-plus Ewing acted as guardian, he was no stranger to the court. Ewing filed countless petitions seeking approval to expend guardianship funds. Court orders provided for the payment of home insurance premiums, ad va-lorem taxes, maintenance and repairs, landscaping services, a security system, a storage building, blinds, hardwood floors, carpet, appliances, and numerous sets of furniture for the home owned by the Estate and occupied by Guardian Ewing and ward Tamarcus.
¶37. In 2009, James Patton, the attorney who filed these requests for Ewing, filed a Motion to Appoint Guardian Ad Litem, alleging, inter alia, that Ewing was in possession of a significant amount of money belonging to the estate of the ward which needed to be deposited in an interest-bearing account. He prayed that Ewing be ordered to produce all bank records and account information. Patton averred that a conflict had arisen, as he was counsel for both Ewing and the guardianship. He prayed that attorney Lee Ann Turner be appointed guardian ad litem (GAL). In a November 2009, order appointing Turner as GAL, the chancellor noted that an accounting had never been filed by Ewing as guardian. Turner was ordered to investigate the ward’s situation, including all finances, and Ewing was required to fully cooperate.
* ¶38. After Ewing denied access to the ward, the ward’s home, and all recbrds, and. after Ewing refused to turn over checks exceeding $82,000 belonging to the guardianship, the GAL filed a Notice to the Court- Regarding Guardian Ad Litem’s Investigation and Motion for Order to Show Cause. Chancellor Colom ordered Ewing to appear and show cause for his failure to comply with court orders. The chancellor further ordered that all accounts holding guardianship funds be retitled “Guardianship of Tamarcus Ewing.” The chancellor found that Ewing had redirected guardianship funds into accounts with Ewing as a co-owner. The chancellor further ordered that'all annuity payments be redirected and immediately frozen in the account in which they were deposited. The chancellor found that Ewing’s “redirection of the annuity payments to a non-guardianship, non-frozen account wás not authorized by Order of this court and was a misappropriation of funds belonging to the child’s guardianship.” Ewing moved to continue the hearing scheduled on the show-cause ' hearing. ' Subsequently, Chokwe Lumumba and' Roy Perkins entered appearances on his behalf.
¶39. On March 12, 2010, the GAL filed a report with the court. Her attached certificate of service reveals that the report, accompanying exhibits, and copies of bank records, which included an August 31, 2004, Deposits and Disbursements and a November 3, 2003, Proposed Periodic Payment Spreadsheet representing all settlement monies, was provided to counsel for Ewing (Perkins and Lumumba) and counsel for the guardianship (Patton).[23] The report informed the court that Ewing had refused to cooperate, had failed to file an accounting since he had been appointed guardian of the estate, had failed to reinvest $82,000 of guardianship funds, had improperly directed at least $79,000 of guardianship funds into a jointly named *690 co-account controlled by him individually, had incurred numerous overdraft charges, and had used guardianship funds without court authorization for items unrelated to Tamarcus’s needs. The bank- records reveal Ewing had made more than $50,000 in unauthorized cash withdrawals and paid more than $29,000 by checks and/or debit card to numerous merchants, including BQuick, Sprintmart, and other convenience-type stores,, also unauthorized by the court. The report also read that “the bank records of Tamarcus’s social security funds do not appear to show a need for additional funds from the guardianship to meet the child’s individual needs that were not being met by court-authorized expenditures of guardianship funds.”[24] The report recommended that Ewing be removed as guardian of the estate.
¶40. In July 2010, the show-cause hearing was held. Understandably, Ewing was stripped of his powers and access when he was removed as guardian of the estate of Tamarcus.[25] No appeal was taken of that order. Turner was relieved as GAL, and Patton was relieved as attorney for the guardianship: Lumumba and Perkins were appointed coguardians.
¶41. On February 7, 2013, the coguardi-ans moved the court for permission to withdraw as guardians of the estate. Lu-mumba subsequently was discharged, but Perkins was ordered to remain as guardian. On July 26, 2013, Ewing individually filed a petition for an accounting of the estate. Ewing alleged that he “has not been given any information as to the deposits into or' disbursements from the estate of Tamarcus Ewing, a minor, despite having made several requests to the legal guardian of the estate of Tamarcus Ewing, a minor.” On September 13, 2013, Ewing moved to substitute Roberta L. Haughton, his present attorney, as “administrator” [sic][26] of the estate of Tamarcus.
¶42. Then, nearly a year later, on July 14, 2014, four years after Ewing was disqualified as guardian and more than ten years after the civil case was dismissed, Ewing individually filed another petition, this time seeking unredacted copies of all settlement documents related to Tamar-cus’s estate. Ewing named the Lowndes County Chancery Clerk and Roy Perkins, improperly identified as the administrator of the estate, as respondents. Ewing claimed that, because he had been at one time a party to his son’s civil action, he was forever entitled to ignore the court’s orders sealing the records and to receive unredacted copies of all settlement documents.
¶43. During the hearing on that petition, Ewing’s counsel advised the chancellor that the guardian of Tamarcus’s estate (Perkins) was not a proper party — “Mr. Perkins, Your Honor, after reflection, I determined that he is really not a proper party at this stage because all we’re seeking is a copy of the records.” It was revealed that Perkins had not even been served. When Perkins was dismissed, only the chancery clerk remained as a party. Following Perkins’s dismissal, the chancellor questioned Ewing’s counsel as to why the clerk was made a party:
Why is the clerk a party, ma’am? The clerk did not seal, redact, do anything, in this case. She is not a party and she is dismissed. ... She is not a party to this. This is an action that was sealed by *691 Order of the Court, but if I unseal it, she will do whatever I order her to do. She’s not a party. ... She has no interest in this case. ... So she may be excused.
The chancellor informed Ewing that the motion should have been directed to the court. Respondents, such as the clerk, were neither necessary nor proper. With both respondents dismissed, the chancellor treated Ewing’s petition as if it were a motion.[27]
¶44. The chancellor advised that “the only person who is a party now in the Chancery Court .,. is Tamarcus Ewing’s legal guardian, ... Mr. Roy Perkins.” The chancellor noted that Tamarcus’s case settled in 2002[28] and that there was no ongoing, legal dispute with the settling defendants.
Your client has been in front of me do you know how many times asking for money. He sat on this stand and testified he approved the settlement in 2002 [sic]. He signed documents in Circuit Court releasing everybody, agreeing to it to be sealed. Now, if he didn’t get copies, that’s between him and his lawyers then. This Court sealed them at their request. I can’t release them because he’s not a party.
Before the chancellor made her final ruling, Ewing cited no applicable caselaw in support of his being allowed access to .the sealed documents. The chancellor denied Ewing’s petition/motion. The chancellor found that (1) the clerk was not a proper party, (2) Ewing was not a party and had no standing, (3) Ewing’s reasons for unsealing the documents lacked legal basis, and (4) the guardian of the estate was not a party to the petition.
¶45. The majority suggests that the “extensive and tortured recitation” of these facts considered by the chancellor has “no bearing on the issue before us for decision.” (Maj. Op. ¶ 23). I am not sure how an appellate court can determine if a trial judge was “manifestly wrong, clearly erroneous, or applied an erroneous legal standard” without meticulously examining the record to determine if the findings of fact and conclusions of law contained in her decree find support , in the record. This journey was necessary to appreciate the facts and law presented to the chancellor and the basis (or lack thereof) of the petition and, finally, Ewing’s involvement. The chancellor recounted the decade-long history of Ewing- taking advantage. of the ward, which this Court should consider in determining ■ whether the chancellor abused her discretion in denying Ewing access to the sealed documents. Without reporting the facts and history of this case, the majority opines that Ewing should prevail, even without notice to the guardian or the settling defendants. It is crystal clear that Ewing failed to satisfy the chancellor that he had a colorable interest in pending litigation, for there is no pending litigation, other than this frivolous appeal. I find no error in the chancellor’s dismissal of Ewing’s petition.

Analysis

¶46. Tommy Ewing has never been a real party in interest in any of these proceedings, as contemplated by Rule 17 of the Mississippi Rules of Civil Procedure and our guardianship laws. He was a titular plaintiff, one in name only, in the original, now dismissed civil action. He was guardian of Tamárcus’s estate before he *692 was disqualified for blatant misappropriation of funds. Initially, Ewing’s authority was limited to filing suit on behalf of Ta-marcus in his representative capacity, i.e., guardian. As a guardian, Ewing possessed no privileges or powers outside that granted by statute, caselaw, and the chancery court. The rights, privileges, and prerogatives attached to the title of guardian existed only during the time Ewing held such title. Once disqualified, any semblance of authority or power to delve into Tamar-cus’s financial affairs vanished. Ewing was more than a stranger to these proceedings, for his less-than-altruistic behavior transformed him into an interloper. Those versed in the maxims of chancery practice would muse that Ewing came to court with worse than unclean hands; his hands were downright dirty. Ewing lacked a cognizable, legal • interest in the civil suit, which was settled long ago. That power rests in the bosom of the court, to be carried out by the guardian (Perkins), or a GAL, if needed, should the court deem it appropriate or necessary.
¶47. The majority sets forth the test fox-standing — a party has standing “‘when they assex-t a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise provided by law.'” Burgess v. City of Gulfport, 814 So.2d 149, 152-53 (Miss.2002) (quoting State v. Quitman County, 807 So.2d 401, 405 (Miss.2001)). Ewing can assei-t no col-orable-interest in the subject matter of the litigation, for there is no ongoing litigation. Likewise, he can experience no adverse effect from the conduct of the defendant, for there is no- defendant. “[T]he issue adjudicated in a standing case is whether the particular plaintiff had a right to judicial enforcement of a legal duty of the defendant or ... whether a party plaintiff in an action for legal relief can show in himself a present, existent actionable title or interest, and demonstrate that this right was complete at the time of the institution of the action.” City of Picayune v. S. Reg’l Corp., 916 So.2d 510, 526 (Miss.2005) (citing American Book Co. v. Vandiver, 181 Miss. 518, 178 So. 598, 599 (1938)). He is not and never has been a party plaintiff in any of these proceedings. He has not shown or presented an existent title or interest in this proceeding. There is no legal duty imposed on a nonexistent defendant. Ewing lacks standing to bring an action to invalidate, modify, or seek enforcement of the settlement agreement.
¶48. There is no record evidence as to why Ewing has need of the settlement documents, or why Ewing named the chancery, clerk as a party, or why Ewing dismissed the guardian of Tamarcus’s estate. Furthermore, this information was provided to all attorneys who either represented Ewing, Tamarcus, Tamarcus’s guardianship, or Debra’s estate during the civil suit and settlement negotiations. Those attorneys include The Crawley Law Office, James C, Patton, Caroline C. Moore, Edward Sanders, Bennie L. Tux-ner,' Armstrong Walters, Michael C. Steele, David Lambert, David Owen, and Bi-ian H, Neely. Aside -from a letter sent to Sanders, there is no record evidence that Ewing attempted to obtain and was refused the documents he signed from any of- these attorneys.
¶49. Ewing forfeited any rights in futuro to participate in financial affairs of the ward, having disqualified himself and been x-emoved from his position of trust. Ewing never has provided any court, much less the trial court, a clear, concise i-eason to unseal the records. Ewing simply argues that-- “not having the documents had ‘caused him a lot [of] px-oblems’ and he *693 needed a copy of his records.”[29]
¶50. From the record presented, including assertions by Ewing in his brief (but not in the record), it is crystal clear that he knew (1) the identity of the defendants from his son’s civil suit, (2) the amount of the monthly annuity payments, (3) the amount of Tamarcus’s monthly social security payments, and (4) the amount of the full settlement. He has offered no testimony that the sealed documents were necessary for him to fulfill his duties as guardian for Tamarcus’s person.
¶51. Ewing plead that he needed to “defend himself’ by determining “what the terms of the settlement were to see if Mr. Ewing did anything improper with settlement proceeds” (this issue was resolved against him without appeal in 2010) was insufficient to require the documents to be unsealed in 2014. Ewing never provided a single, pending civil or criminal complaint or demand against him, although he was given multiple opportunities to do so. Ewing also offered no legal authority to. the chancellor or to this Court to support his request as an individual. His only stated reasons were abstract, vague, -without substance, and without proof. It was Ewing’s obligation to establish a legal right to unseal the documents. He failed.
¶52. The crux of Ewing’s complaint revolves around his removal as guardian of the estate. Ewing never appealed his 2010 removal. That train left the station, several years ago. The record is void as to where and from whom Ewing needs to defend himself. His removal was unrelated to the settlement amount, except for failing properly to account for monies that flowed into various guardianship accounts. The settlement amount was a set sum. The monthly annuity sums are no different than those deposited when Ewing held the position of guardian. His removal was for mismanagement of his son’s money. The sealed documents do not reveal Ewing’s misappropriation and mismanagement of Tamarcus’s funds. Documents ■ already delivered to Ewing and in his possession, i.e„ bank account records, reveal the unauthorized withdrawals made by Ewing. Court records reveal the withdrawals were not approved by the court.
¶53. Ewing cites Williamson v. Edmonds, 880 So.2d 310 (Miss.2004). Williamson is wholly distinguishable from this case. In Williamson, the Edmondses sought a declaratory judgment against their former attorney, Williamson.[30] Id. at 312. The Edmondses were real parties in interest, unlike in today’s case. Williamson, a party, refused to turn over documents requested in discovery, claiming the information was privileged and confidential. Id, The trial court granted the Edmondses’ motion to compel and the Williamson Court granted interlocutory review. Id. at 314. That Court affirmed the trial-court judgment, holding that Williamson could not “shield himself from a motion to compel discovery based on the attorney-client privilege.” Id. at 320. No claim of attorney-client privilege is made in today’s case. Williamson has no application to the case sub judice. No suit is pending against anyone-except a dutiful chancery clerk. There was a claim and suit against Williamson.
¶54. Likewise, Estate of Cole v. Ferrell, 163 So.3d 921 (Miss.2012), cited by the majority, offers no relief to Ewing. Tamar-cus and the defendants have a privacy interest.[31] Estate of Cole held that confi *694 dentiality should be preserved if (1) the settlement agreement was between private parties (Tamarcus and the settling defendants are private parties), (2) the settlement agreement did not involve public concerns (none expressed in agreements), and (3) the settlement agreement is not necessary to resolve a claim (no claim is pending). Id. at 929. All three prongs of the Estate of Cole were easily satisfied; therefore, the chancellor did not err in preserving confidentiality. Although these factors generally are applied by courts to seal documents, logic dictates that the same reasoning also should be taken into account when a request is made to unseal documents.
¶55. Ewing has failed to provide the trial court and this Court with authority that the order sealing the documents does not apply to him. Neither the trial court nor this Court is under an obligation to consider arguments for which Ewing provides no authority. See Chantey Music Pub., Inc. v. Malaco, Inc., 915 So.2d 1052, 1060 (Miss.2005); M.R.A.P. 28(a)(6). In his “ARGUEMENT” [sic] and for the first time in all proceedings, Ewing claims he is illiterate and was unable to read the settlement documents prior to signing them. He now claims on appeal that his attorneys did not read the documents to him and that they refused to allow anyone else to read the documents to him. Also for the first time on appeal, Ewing now claims he has received some notice from the Internal Revenue Service (with no writings to support this) that taxes were not paid for the year 2013. Ewing was not the guardian for Ta-marcus’s estate in 2013. Ewing “is not entitled to raise a new issue on appeal, since to do so prevents the trial court from having an opportunity to address the alleged error.” West v. West, 891 So.2d 203, 214 (Miss.2004) (quoting Crowe v. Smith, 603 So.2d 301, 305 (Miss.1992)).

Frivolous Appeal

¶56. Despite the chancellor’s finding that the chancery clerk was not a proper party to this suit, Ewing identified the clerk as the appellee and continues to pursue a frivolous appeal. See M.R.A.P. 38. He argues that the clerk’s office “refused” his request for the settlement documents and that the clerk “denied numerous requests.” He further argues that the elei-k failed to make any argument at the hearing on his petition and thus should be prevented from making an argument to this Court in this appeal. Ewing argues that the chancery clerk should not be allowed to raise any issue before this Court that was not raised before the chancellor. The clerk was dismissed by the chancellor, for she was not a proper party. As a matter of law, the clerk was under no duty to provide the requested documents to Ewing. Thus, the chancery clerk must prevail on this appeal. The clerk is the custodian of the records, yet the clerk is duty bound to follow the orders of the court. The order in place requires the records to remain sealed. The clerk had no independent authority on her own to unseal the documents at the request of Ewing. His argument otherwise is unavailing and must be rejected. I would affirm the chancellor’s order dismissing the clerk and would remand for a hearing on costs and expenses incurred by the clerk in defense of Ewing’s frivolous petition before the trial court and this appeal.

Conclusion

¶57. Ewing not only failed to fulfill the duties of his office, guardian of his son’s estate; he violated the tenets of a guardian. He redirected annuity funds into a joint account after the court froze the guardianship account. When the GAL filed her *695 report, she could not account for nearly $180,000 of guardianship monies moved at Ewing’s behest. Despite the large sums of money at his disposal, Ewing incurred unnecessary nonsufficient funds and overdraft fees on numerous occasions. Ewing’s actions required the court to appoint a guardian ¿d litem who has been paid over $32,000, none of which would the guardianship have incurred had Ewing fulfilled his duties and obligations.
¶58. The chancellor neither erred in dismissing Ewing’s petition nor in denying Ewing access to sealed documents. The chancellor properly dismissed his petition. Additionally, -Ewing failed to present any factual or legal basis as to why the chancellor should unseal the record for Ewing. He has no interest in a settled action and has offered no. evidence that he has suffered damages as a result of the record being sealed. Ewing’s petition and subsequent appeal is frivolous. It has no basis in law or fact. I respectfully dissent.
¶59. The judgment of the chancellor should be affirmed and this case remanded to the chancellor to conduct a hearing on (1) whether sanctions are appropriate under Rule 11(b) of the Mississippi Rules of Civil Procedure, (2) whether the assessment of attorney fees and costs against Haughton and/or Ewing pursuant to the Litigation Accountability Act of 1988[32] are appropriate, and (3) whether damages are appropriate for violations of Rule 38 of the Mississippi Rules of Appellate Procedure.
WALLER, C.J., MAXWELL AND BEAM; JJ., JOIN THIS OPINION.

. The review is extensive due to the paucity of facts reported in the majority leading to the chancellor’s ruling.

. Webster’s Dictionary defines “torture” as distort and "tortuous” as twisting and/or devious. Torture, Tortuous, Webster’s II New College Dictionary (1st ed. 1995).

.The duties of a guardian are well described in Sections 93-13-1 to 93-13-281 of the Missis *688 sippi Code. Loyally and fidelity to the ward are paramount.

. See Miss. Code Ann. § 93-13-27 (Rev, 2013); Miss. R. Civ. P. 17(c).

. Ewing, as an individual, neither had nor made a claim as a real party in interest based on the accident.

, Ewing requested and received $7,725.00 in per diem, $2,455.20 in mileage, and a $20,000 fee "which represents the balance of attorneys’ fee [sic]... for all of the travel and expense Tommy Ewing had to incur in the prosecution of the civil litigation. ...”

. Total house purchase disbursement equaled $144,284.

. Nothing in the record evidences that Ewing requested these documents from either of these new attorneys who represented Ewing individually, except for the claim made against Perkins in this proceeding, which then was waived during the proceeding and dismissed. See ¶ 42, infra.

. Tamarcus’s social security payments were approximately $790 per month.

. See Miss. Code Ann. ,.§ 93-13-23 (Rev. 2013).

.Throughout the proceedings below and on appeal, Ewing consistently refers to the guardian of the estate as the "administrator of the estate.”

. Even if we had decided a right to appeal was warranted on a denial of a petition to unseal the documents, would not such a petition require notice to the guardian of the estate and to all parties and their counsel from the settled, civil suit? No such, notice appears.

. The case settled in 2003.

. See Maj. Op. at ¶ 10.

. Williamson represented the Edmondses and numerous others in Phen-Fen product liability litigation. Id. at 314.

.The majority argues that, because Ewing once had access or privity to the documents, he should enjoy that status forever, citing no *694 authority for such proposition, (Maj. Op. ¶ 22).

. See Miss. Code Ann. §§ 11-55-1 to 11-55-15 (Rev. 2010).